IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM F. CRIST,          ) | |
|                            ) | |
|     Plaintiff,             ) | |
|                            ) | |
|     v.                     ) Civ. No. 09-957-SLR | |
|                            ) | |
| WARDEN PERRY PHELPS,       ) | |
| DEPUTY WARDEN CHRIS KLEIN, ) | |
| MAJOR JAMES SCARBOROUGH,   ) | |
| S/LT. BERNARD WILLIAMS,    ) | |
| LT. FLOYD DIXON, and       ) | |
| COMMISSIONER CARL DANBERG, ) | |
|                            ) | |
|     Defendants.            ) | |

**MEMORANDUM ORDER**

At Wilmington this 27th day of April, 2010, having screened the case pursuant to 28 U.S.C. § 1915 and § 1915A;

IT IS ORDERED that Counts Four through Eleven of the complaint are dismissed as frivolous pursuant to 28 U.S.C. § 1915 and § 1915A, and plaintiff may proceed with Counts One through Three of the complaint, for the reasons that follow:

1. **Background.** Plaintiff William F. Crist ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this civil rights action pursuant to 42 U.S.C. § 1983. He appears pro se and has been granted leave to proceed in forma pauperis.

2. **Standard of Review.** This court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28

U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

3. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); see, e.g., *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

4. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to

state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

5. A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, –U.S.– , 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."[1] *Id.* at 211. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown -

---

[1] A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

3

that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

6. **Discussion**. Counts One, Two, and Three allege that defendants Warden Perry Phelps ("Phelps"), Deputy Warden Chris Klein ("Klein") and Major James Scarborough ("Scarborough") transferred plaintiff to administrative segregation and ignored rules and procedures in retaliation for his complaints against the administration, and that they conspired to punish plaintiff for his letters and complaints.[2] (D.I. 2, ¶¶ 11-70) Count Four alleges that, after being informed, Commissioner Carl Danberg ("Danberg") did not correct the actions of Phelps, Klein, and Scarborough. (*Id.*) Counts Five, Six, Seven, Eight, and Ten allege that Sgt. Floyd Dixon ("Dixon") and S/Lt. Bernard Williams ("Williams") conspired to violate plaintiff's right to due process, violated his right to due process, and Williams falsified a disciplinary hearing record. (*Id.* at ¶¶ 77-121) Counts Nine and Eleven allege that after being informed, Phelps did not correct the actions of Dixon and Williams and he systematically denies inmates at the VCC their right to due process. (*Id.*)

---

[2] It is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. See *Wilkinson v. Austin*, 545 U.S. 209 (2005); *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montayne*, 427 U.S. at 243; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). The custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225. While plaintiff complains of his classification change, he does not raise it as a claim. Rather, Counts One and Three allege a retaliatory change in classification because of plaintiff's complaint and a conspiracy to retaliate. Liberally construing the complaint as the court must, the allegations in Counts One, Two, and Three, appear to allege non-frivolous and cognizable retaliation and conspiracy claims.

4

7. **Personal Involvement/Respondeat Superior**. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Counts Four and Eleven allege that Danberg and Phelps failed to take corrective action after being informed that plaintiff's constitutional rights had allegedly been violated. As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.[3] *See Iqbal*, 129 S.Ct. 1937; *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d at 353 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities.[4] *Iqbal*, 129 S.Ct. at 1949. "Absent

---

[3]In *Iqbal*, the plaintiff alleged supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. *See id.* at 1944. The Supreme Court found the allegations facially insufficient. *See Iqbal*, 129 S.Ct. at 1949 (quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888), for the proposition that "[a] public officer or agent is not responsible for the misfeasances or [] wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

[4]In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official. *See Bayer v. Monroe County Children and Youth Services*, 577 F.3d 186, 190 n.5 (3d Cir. 2009).

5

vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

8. It is evident that the claims against Phelps and Danberg are based solely on the theory of respondeat superior. The letters to which plaintiff refers were sent after the alleged constitutional violations. Danberg acted upon one of plaintiff's letters and forwarded it to the Chief of the Bureau of Prisons ("Bureau Chief"). (D.I. 2, ex. C) Phelps did not respond plaintiff's letter. (*Id.* at ¶¶ 101, 102. Phelps and Danberg cannot be imputed with personal knowledge and acquiescence in the prior alleged conduct solely by virtue of receiving or reviewing plaintiff's letters. *See Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not published) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (granting summary judgment to nonmedical prison officials whose involvement with prisoner's healthcare was limited to failing to respond to prisoner's letters explaining his predicament); *Davila-Bajana v. Sherman*, 278 F. App'x 91, 93-94 (3d Cir. 2008) (not published); *see also Cole v. Sobina*, Civ. No. 04-99J, 2007 WL 4460617 (W.D. Pa. Dec. 19, 2007); *Ramos v. Pennsylvania Dep't of Corr.*, Civ. No. 06-1444, 2006 WL 2129148 (M.D. Pa. July, 27, 2006); *Jefferson v. Wolfe*, Civ. No. 04-44 ERIE, 2006 WL 1947721 (W.D. Pa. July, 11, 2006). *Cf. Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa.1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998).

9. Counts Four and Nine are nothing more than allegations of supervisor liability, which are not cognizable in a § 1983 action. *See Rizzo v. Goode*, 423 U.S. 362, 376 (1976); *Davila-Bajana*, 278 F. App'x at 93-94. As a result, Counts Four and Nine lack an arguable basis in law or in fact and are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

10. **Due Process.** Counts Five, Seven, Ten, and Eleven allege due process claims. Count Five alleges that Dixon violated plaintiff's due process rights when he repeatedly failed to comply with DOC procedure 4.2; Count Seven alleges that Williams violated plaintiff's due process rights when he failed to comply with DOC procedure 4.2 and upheld Dixon's actions; Count Ten alleges that when Williams heard plaintiff's appeal, he falsified the disciplinary record by claiming to act on behalf of the Bureau Chief; and Count Eleven alleges that Phelps "assures" that inmates at the VCC are denied their right to due process by systemically denying inmates timely access to housing rules and the penal code of discipline.[5]

11. More specifically, plaintiff received disciplinary reports on March 4, 2008 and September 25, 2008. On both occasions he asked, but was not allowed, to confront his accusers. He also asked to call witnesses after he received the September 2008

---

[5] Plaintiff filed grievances and ultimately received a copy of the MHU housing rules and a copy of the Code of Penal Discipline, DOC Procedure 4.2, effective March 9, 2009. (D.I. 2, ¶¶ 106, 110; exs. W at 2 and Z at 9) He has not received a copy of the previous DOC Procedure 4.2, effective July 31, 2006. (*Id.* at ¶ 112; ex. Z at 10) To the extent that plaintiff raises claims because of his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail. An inmate does not have a constitutionally protected right to a grievance procedure. *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (not published) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

7

disciplinary report. Plaintiff alleges that the March 4, 2008 hearing was adjourned "until plaintiff could confront his accuser," but the hearing was never completed, and he was found guilty in absentia. As punishment for the March 2008 charge, plaintiff received fifteen days confinement to quarters. His appeal was denied and the memorandum from the Bureau Chief that advised plaintiff of the denial contains the statement, "This report has been reviewed by Williams, Bernard" and is signed by Williams. (D.I. 2, ex. Q) During the hearing on the September 2008 charge, the Class One charges were dismissed and plaintiff was summarily found guilty of Class Two charges. He received a ten day sanction, appealed, and the sanction was reduced to five days.[6] In reading plaintiff's specific allegations, it is evident that the gist of his claims is that he was subjected to discipline without due process of law.

12. Plaintiff's claim that he was denied due process lacks legal merit. It is axiomatic that to be entitled to procedural due process protections as set forth in *Wolff v. McDonnell*, a prisoner must be deprived of a liberty interest.[7] *Wolff v. McDonnell*, 418

---

[6] Plaintiff also refers to a disciplinary report he received in January 2005. (¶¶ 118-121) This complaint was filed on December 10, 2009, over two years after the expiration of the two year limitation period. See *Carr v. Dewey Beach,* 730 F. Supp. 591 (D. Del. 1990). "[W]here the statute of limitations defense is obvious from the face of the complaint and no development of the factual record is required to determine whether dismissal is appropriate, sua sponte dismissal under 28 U.S.C. § 1915 is permissible." *Smith v. Delaware County Court*, 260 F. App'x 454 (3d Cir. 2008) (not published); *Wakefield v. Moore*, 211 F. App'x 99 (3d Cir. 2006) (not published) (citing *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006)). It is clear from the face of the pleadings that said claim is time-barred and, therefore, the court does not consider the allegations.

[7] While prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of a criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands

U.S. 539, 557-58 (1974). "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed." *Sandin v. Conner*, 515 U.S. 472 (1995). Prison disciplinary segregation will implicate a protectable liberty interest only if it dramatically departs, in length of time or otherwise, from basic prison conditions. *See, e.g., Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); *Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997) (fifteen months in administrative custody is insufficient to trigger a due process violation).

13. The discipline meted to plaintiff did not result in an atypical or significant deprivation that would give rise to a liberty interest under *Sandin*. Hence, plaintiff's inability to face his accusers or to call witnesses, as well as any other alleged procedural defects, lacks legal significance in the absence of any protectable interest. *See Sandin*, 515 U.S. at 487; *see also Williams v. Bitner*, 307 F. App'x 609 (3d Cir. 2009) (not

---

and realities of the prison environment. *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 at 563-71; *Griffin v. Spratt*, 969 F.2d 16, 19-20 (3d Cir. 1992). Hence, inmates do not have an absolute constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings. *See* Wolff at 567-68. Further, a right to appeal disciplinary convictions is not within the narrow set of due process rights delineated in *Wolff*. *See Bruton v. Denny*, Civ. No. 06-744-SLR, 2007 WL 1576341, at *3 (D. Del. May 30, 2007); *Counterman v. Fauver*, Civ. No. 83-4839, 1989 WL 200954 (D.N.J. Nov. 24, 1989); *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983); *Greer v. De Robertis*, 568 F. Supp. 1370 (N.D. Ill. 1983).

published). Based upon the relatively short duration of punishment (i.e., fifteen days for the March 2008 charge and five days for the September 2008 charge), plaintiff lacks the requisite liberty interest to implicate a due process violation. As plaintiff has not articulated a protected liberty interest, the court dismisses the due process claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

14. **Conspiracy**. Counts Six and Eight allege that Dixon and Williams conspired to violate plaintiff's right to due process. For a conspiracy claim, there must be evidence of (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by defendants with the specific intent to violate that right. *Williams v. Fedor,* 69 F. Supp. 2d 649, 665-66 (M.D. Pa.), *aff'd,* 211 F.3d 1263 (3d Cir. 2000) (citations omitted). As discussed above, the due process allegations do not rise to the level of a constitutional violation. As a result, there can be no conspiracy to violate plaintiff's right to due process. The conspiracy claims are frivolous and are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

15. **Injunctive Relief**. Plaintiff's prayer for relief seeks injunctive relief to: (1) restore his previous status, classification, and employment; (2) order the recording of all disciplinary hearing on tape with a transcript provided to inmates and to retain the record for three years; (3) "clear" his disciplinary record; and (4) appoint attorneys to oversee the disciplinary process at VCC for a minimum of three years. (D.I. 2, ¶¶ C. 1, 3, 4, 5) As previously noted, plaintiff has no constitutional right to a certain status or classification. *Supra,* at n.2. Nor does he have a constitutional right to employment. *James v. Quinlan,* 866 F.2d 627, 630 (3d Cir. 1989). The other claims invoke due

process rights and, as discussed above, plaintiff's due process rights were not violated. For the above reasons, the court dismisses the claims for injunctive relief found at ¶¶ C. 1, 3, 4, and 5 of the complaint.

16. **Conclusion**. For the above reasons, Counts Four through Eleven of the complaint are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Defendants Williams, Dixon, and Danberg are dismissed. Plaintiff may proceed with Counts One through Three against Phelps, Klein, and Scarborough.

IT IS FURTHER ORDERED that:

1. The Clerk of Court shall cause a copy of this order to be mailed to plaintiff.

2. Pursuant to Fed. R. Civ. P. 4(c)(3) and (d)(1), plaintiff shall complete and return to the Clerk of Court an **original** "U.S. Marshal-285" form for **remaining defendants Warden Perry Phelps, Deputy Warden Chris Klein, and Major James Scarborough**, as well as for the Attorney General of the State of Delaware, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to DEL. CODE ANN. tit. 10 § 3103(c). Plaintiff provided the court with copies of the complaint for service upon the remaining defendants. However, the copies are missing pages 4, 5, 8, 9, 11, 12, 13, 14, 15, 16, and ex. B page 4 of 9. Plaintiff shall provide the court with the missing pages of the complaint for each required service copy. Plaintiff is notified that the United States Marshal Service ("USMS") will not serve the complaint until all "U.S. Marshal 285" forms and missing pages of the complaint have been received by the Clerk of Court. Failure to provide the "U.S. Marshal 285" forms and the missing pages of the complaint for each remaining defendant and the attorney general within 120 days of this order may

result in the complaint being dismissed or defendants being dismissed pursuant to Federal Rule of Civil Procedure 4(m).

3. Upon receipt of the form(s) required by paragraph 2 above, the USMS shall forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon each of the defendants so identified in each 285 form.

4. A defendant to whom copies of the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form have been sent, pursuant to Fed. R. Civ. P. 4(d)(1), has thirty days from the date of mailing to return the executed waiver form. Such a defendant then has sixty days from the date of mailing to file its response to the complaint, pursuant to Fed. R. Civ. P. 4(d)(3). A defendant residing outside this jurisdiction has an additional thirty days to return the waiver form and to respond to the complaint.

5. A defendant who does not timely file the waiver form shall be personally served and shall bear the costs related to such service, absent good cause shown, pursuant to Fed. R. Civ. P. 4(d)(2). **A separate service order will issue in the event a defendant does not timely waive service of process.**

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. **NOTE:** *** When an amended complaint is filed prior to service, the court will **VACATE** all previous service orders entered, and service **will not take place**. An

amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). \*\*\*

8. **Note:** \*\*\* Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. \*\*\*

/s/ Sue L. Robinson<br>
UNITED STATES DISTRICT JUDGE